**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| UNILOC USA, INC. and<br>UNILOC LUXEMBOURG S.A.,<br><br>          Plaintiffs,<br><br>   v.<br><br>APPLE INC.,<br><br>          Defendant. | Case No. 2:17-cv-00258<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S MOTION TO CHANGE VENUE
TO THE NORTHERN DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   INTRODUCTION .................................................................................................................. 1

II.   BACKGROUND ................................................................................................................... 2

III.   LEGAL STANDARD............................................................................................................ 4

IV.   ARGUMENT ......................................................................................................................... 5

    A.   This Case Could Have Been Brought In The Northern District Of California. ........... 5

    B.   The Private Factors Favor Transfer. ........................................................................... 5

        1)   Most Relevant Sources Of Proof Are In Or Near The Northern District of California. ........................................................................................................ 5

            a)   Apple's Evidence Is In The Northern District of California. .................. 5

            b)   Key Third-Party Evidence Is In The Northern District of California. .................................................................................................... 6

            c)   The Location of Uniloc's Documents Does Not "Balance" The Evidence Apple Has Presented. ............................................................... 7

        2)   The Availability Of Compulsory Process Favors Transfer................................. 8

        3)   The Convenience Of Both Party And Non-Party Witnesses Favors Transfer. ........................................................................................................... 10

        4)   Other Practical Problems Associated With Trial Of This Case Are Neutral................................................................................................................ 13

    C.   The Public Interest Factors Favor Transfer To The Northern District. ...................... 14

        1)   California Has A Strong Local Interest In Both The Accused Products And The Asserted Inventions................................................................................ 14

        2)   The Remaining Public-Interest Factors Are Neutral. ....................................... 14

V.   CONCLUSION.................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adaptix, Inc. v. Apple Inc.*,
    2013 WL 12138597 (E.D. Tex. Mar. 28, 2013) ............................................................... 13, 15

*Adaptix, Inc. v. HTC Corp.*,
    937 F. Supp.2d 867 (E.D. Tex. 2013)................................................................................. 8, 10

*Aguilar-Ayala v. Ruiz*,
    973 F.2d 411 (5th Cir. 1992) ................................................................................................. 8

*Bush Seismic Technologies LLC v. American Gem Society*,
    2016 WL 1545855 (E.D. Tex. Apr. 15, 2016)........................................................ 5, 7, 10, 12

*CQIS LLC v. EMC Corp.*,
    67 F. Supp.3d 769 (E.D. Tex. 2014).................................................................................... 14

*DSS Tech. Mgmt., Inc. v. Apple*,
    2014 WL 6847569 (E.D. Tex. Nov. 7, 2014) ..................................................................... 5, 15

*Gonzalez v. Tagged, Inc.*,
    2015 WL 5578367 (E.D. Tex. Sep. 22, 2015) ........................................................................ 15

*In Re Genentech*,
    566 F.3d 1338 (Fed. Cir. 2009) .............................................................................. 6, 7, 10, 15

*In Re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2008) ............................................................................................ 14

*In re Toa Techs., Inc.*,
    543 F. App'x 1006 (Fed. Cir. 2013) ....................................................................................... 6

*In Re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .................................................................................... 4, 12, 13

*In Re Volkswagen of America, Inc.*
    545 F.3d 304 (5th Cir. 2008) ............................................................................................ 4, 6

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*,
    2012 WL 194382 (E.D. Tex. Jan. 23, 2012).......................................................................... 15

*Personalweb Techs., LLC v. Apple, Inc.*,
    2014 WL 1689046 (E.D. Tex. Feb. 12, 2014) .................................................................... 6, 15

*Porto Tech. Co., Ltd. v. Apple Inc.*,
    2016 WL 937366 (E.D. Tex. Mar 11, 2016) ......................................................................... 15

*Realtime Data, LLC v. Rackspace US, Inc.*,
  2017 WL 772653 (E.D. Tex. Feb. 28, 2017) ...................................................................... 10, 12

*Texas Data Co., LLC v. Target Brands, Inc.*,
  771 F. Supp.2d 630 (E.D. Tex. 2011) ...................................................................................... 10

*Uniloc USA, Inc. v. Distinctive Development Ltd.*,
  964 Supp.2d 683 (E.D. Tex. 2013) .......................................................................................... 15

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
  2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ........................................................................... 13

**Codes and Statutes**

28 U.S.C. § 1400 ................................................................................................................................... 5

28 U.S.C. § 1404 ................................................................................................................................... 4

**Rules and Regulations**

Fed. R. Civ. P. 45 ...................................................................................................................... 8, 9, 10

Pursuant to 28 U.S.C. § 1404(a), defendant Apple Inc. ("Apple") respectfully moves the Court for an order transferring venue in this action to the Northern District of California.

## I.    INTRODUCTION

This case presents an extensive, compelling set of facts in favor of transfer to the Northern District of California.  Apple is a California corporation, headquartered—as it has been for over 40 years—in the Northern District.  The accused products were developed in Apple's Northern District headquarters.  The engineers knowledgeable about these products are in the Northern District.  And the relevant engineering, sales, and marketing documents are in the Northern District.

The case for transfer here, however, goes far beyond Apple's strong links to its home forum.  Over a half-dozen third-party individuals and a third-party corporation with knowledge of multiple pieces of important prior art are located in the Northern District.  An individual knowledgeable about the sale and acquisition of one patent-in-suit is also in the Northern District.  The Northern District has subpoena power over, and is more convenient for, these third parties.  Beyond this, Uniloc's founder and sole inventor, as well as its CFO, live and work in southern California.  Both of Uniloc's prosecuting attorneys live or spend substantial time in southern California.  These witnesses would thus suffer little, if any, burden from litigating in the Northern District.

In contrast, this case has few, if any, ties to this District.  Apple has no relevant presence in or near this District.  The patent owner, plaintiff Uniloc Luxembourg S.A., is a European company with no known ties to Texas other than as a serial litigant.  There are no known material third party witnesses or sources of proof in or near this District.  And many of Uniloc's key witnesses appear to spend at least as much time in California as in Texas.  On these facts, the benefit of transfer is at its height, and any burden to Plaintiffs is at its minimum.

## II.   BACKGROUND

Since its founding in 1976, Apple has been a California corporation, headquartered in Cupertino, California.  (Declaration of Michael Jaynes ("Jaynes Decl."), ¶ 4.)  Apple employs more than 27,000 people in and near its Cupertino headquarters.  (*Id.* ¶ 5.)  The engineers who developed the accused features in this case—destination predictions, Apple's UDID and Apple ID parameters, and Apple's iOS update process—work in or near Cupertino.  None of Apple's relevant engineers are located in, or work with employees in, the state of Texas.  (*Id.* ¶ 7.)  Apple's technical documents relating to the accused functionalities are located in Apple's Northern District offices, as are its marketing and financial documents.  (*Id.* ¶¶ 7, 14.)

The complaint in this case names two plaintiffs.[1]  The first, Uniloc Luxembourg, S.A., is a Luxembourg entity with its principal place of business in Luxembourg.  ([Dkt. No. 1, 4/3/17 Complaint, at ¶ 2](#).)  The second, Uniloc USA, Inc., is a Texas company that is registered to do business in California.[2]  (Ex. 3, Uniloc Franchise Tax Acc't Status.)  Uniloc USA maintains a California office at 4 Park Plaza in Irvine, California.  (Ex. 4, 10/4/16 Statement of Information.)  As recently as January 2016, Uniloc's founder, Craig Etchegoyen, declared under oath that this facility was a Uniloc USA "headquarters."  (Ex. 5, *Uniloc v. Broderick* Etchegoyen Decl. ¶ 2.)  Uniloc USA also appears to have several employees in California.  Drake Turner, who is apparently Uniloc's Chief Financial Officer, lives and works in Southern California.  (Ex. 6, 8/14/15 Press Release; Ex. 7, Turner Deed.)  Similarly, Uniloc USA's Intellectual Property Counsel, Tanya Kiatkulpiboone, works in Uniloc's Irvine, California office.  (Ex. 8, Kiatkulpiboone LinkedIn Page; Ex. 9, *Uniloc v. Facebook* Burdick Decl. ¶ 10.)

---

[1] Except where otherwise specified, "Uniloc" refers to both plaintiffs collectively.

[2] Until January 2015, when Mr. Burdick and Mr. Etchegoyen dissolved it, Uniloc, Inc. was a separate California corporation and Mr. Burdick its CEO, CFO, and sole named director.  (Ex. 1, 1/9/15 Statement of Information, Uniloc, Inc.; Ex. 2, Cert. of Dissolution, 1/26/15.)  Unless otherwise noted, all exhibits cited herein are to the Declaration of Emma Neff.

Uniloc's complaint alleges infringement of three patents: U.S. Patent Nos. 8,239,852, 8,838,976, and 9,414,199.  This is the only action involving these patents in any jurisdiction, and Apple is the sole defendant.  The '852 Patent describes retrieving device and software identifiers and using them to provide software updates.  (Dkt. No. 1-4, '852 Patent at 1:31-44.)  The '976 Patent discloses retrieving data regarding "carbon and/or silicon degradation" and using it to generate a "device identifier."  (Dkt. No. 1-3, '976 Patent at 15:8-19.)  The '199 Patent describes a method of delivering information to user devices based on predictions about their future locations.  (Dkt. No. 1-2, '199 Patent at 8:7-25.)  Uniloc accuses Apple's iOS software updates, its use of parameters called Apple IDs and UDIDs, and its Maps destination predictions, of infringing these three patents.  (Dkt. No. 1, 4/3/17 Complaint, ¶¶ 10-15, 27-31, 42-48.)

The sole named inventor of all three patents-in-suit is Uniloc co-founder Craig S. Etchegoyen.  Public records show that Mr. Etchegoyen maintains a California residence and uses a California telephone number.  (Ex. 10 at p. 1, Orange County Property Records; *Id.* at pp. 2-3, Etchegoyen Westlaw PeopleMap Report.)  He also drives a vehicle in California with California license plates, and lists a California address on his pilot's license.  (*Id.* at p. 4, occapps.occourts.org Case Summary; *Id.* at p. 5, Airman Details Report.)

The patents-in-suit were prosecuted by Uniloc USA's General Counsel, Sean Burdick, along with its Irvine-based IP counsel, Ms. Kiatkulpiboone.  (*See* Exs. 11-13, '976, '199, and '852 File History Excerpts.)  Mr. Burdick and Ms. Kiatkulpiboone are each admitted to the bar in California.  (Ex. 14, Bar Memberships at pp. 1-2.)  Neither appears to be admitted in Texas.  (*See id.* at pp. 3-4.)  Mr. Burdick co-owns a California home, keeps a California residence, and uses a California phone number.  (Ex. 15 at pp. 1-2, Burdick PeopleMap Report; *Id.* at pp. 3-4, 6/28/13

Grant Deed.)   Uniloc's attorneys prosecuted the '976 and '852 Patents in large part from Uniloc's California office.  (Exs. 11, 13.)

This case is at a very early stage.  No scheduling conference has been held, and no trial date set.

## III.   LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  To justify transfer under § 1404(a), a moving party must first show that the claims "might have been brought" in the proposed transferee district.  *In Re Volkswagen of America, Inc.* 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*").  The party seeking transfer must then show that the "transferee venue is clearly more convenient" than the district where the case was originally filed.  *Id.* at 315.

In applying the transfer standard, courts in this district weigh a series of eight "private" and "public" factors.  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In Re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The public factors, in turn, include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *Id.*

A plaintiff's choice of venue is <u>not</u> a factor in the transfer analysis.  *Volkswagen II*, 545 F.3d at 315.  Rather, this choice is taken into account through the "clearly more convenient" standard applied by the Court in weighing the transfer request.  *Id.*

4

## IV.    ARGUMENT

### A.    This Case Could Have Been Brought In The Northern District Of California.

Under 28 U.S.C. § 1400(b), a patent-infringement action may be brought in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."   Apple is a California corporation and is headquartered in Cupertino, California, within the Northern District.  (Jaynes Decl. ¶ 4.)  Venue is proper in the Northern District, and this case could have been brought there.

### B.    The Private Factors Favor Transfer.

Apple's documents and witnesses, as well as third-party documents and witnesses, are located in the Northern District.  Few, if any, relevant documents are located in this District.  And given their California ties, transfer would not significantly burden Uniloc's witnesses.  The private factors thus strongly favor transfer to the Northern District.

### 1)   Most Relevant Sources Of Proof Are In Or Near The Northern District of California.

Access to sources of proof strongly favors transfer.   "This factor turns upon which party—usually the accused infringer—will most probably have the greater volume of documents relevant to the litigation and the presumed location of these documents in relation to the proposed and transferor venues."   *Bush Seismic Technologies LLC v. American Gem Society*, 2016 WL 1545855, *3 (E.D. Tex. Apr. 15, 2016).  Here, all of Apple's relevant documents, and relevant third-party documents and physical evidence, are located in the Northern District.

### a)   Apple's Evidence Is In The Northern District of California.

Where a defendant has most of the identified relevant documents, "the place where the defendant's documents are kept weighs in favor of transfer to that location."  *DSS Tech. Mgmt., Inc. v. Apple*, 2014 WL 6847569, * 2 (E.D. Tex. Nov. 7, 2014) (citing *In Re Genentech*, 566 F.3d

5

1338, 1345 (Fed. Cir. 2009)).   The physical location of documents is a factor in the transfer analysis, even if the documents are in electronic form.  *Volkswagen II*, 545 F.3d 304 at 316; *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1008-09 (Fed. Cir. 2013).   Here, Uniloc's complaint appears to accuse Apple's iOS update process, Maps destination predictions, Apple ID, and UDID of infringement.  All of the design, development, and engineering of these technologies took place in Cupertino, California by Apple employees working there.  (Jaynes Decl. ¶ 7.)  The design and engineering documents relating to these technologies are stored in or near Cupertino, in the Northern District.  Apple's marketing and sales documents are likewise located in the Northern District.  (*Id.* ¶ 14.)  And Apple's highly-confidential source code is maintained in the Northern District and would have to be physically transported to a trial in this District.  (*Id.* ¶ 7.)

In contrast, none of Apple's relevant documents are located in Texas.  (Jaynes Decl. ¶¶ 19, 20.)  While Apple maintains a facility in Austin, Texas, no Apple documents or witnesses relevant to this case are in Austin, or anywhere in Texas.  (*Id.* ¶ 20.)  Apple's only presence in this District is two retail Apple Stores.  (*Id.* ¶ 19.)  These stores have no internal technical, sales, or marketing documents relevant to this case.  (*Id.*)  The location of Apple's documents in the Northern District thus favors transfer there.  *See Personalweb Techs., LLC v. Apple, Inc.*, 2014 WL 1689046, *11 (E.D. Tex. Feb. 12, 2014).

### b)  Key Third-Party Evidence Is In The Northern District of California.

In addition to Apple's documents, third-party evidence, including prior art, is located in the Northern District.  Uniloc's '199 Patent claims a method for delivering information to user devices based on predictions about the devices' future location.  Before the '199 Patent was filed, Google released its Android 4.2 ("Jelly Bean") software, including a feature called Google Now.  (Ex. 16, 5/13/13 MIT Technology Review.)  Google Now attempted to offer users information, such as travel times, based on predictions about the users' future destinations.  (Ex.

17, Google Now Image.)  Apple thus believes that Google Now is material prior art to the '199 Patent.  Documents and source code relevant to this prior art are very likely located in the Northern District.  Five individuals who worked on technologies apparently related to this product are located in Northern California.  *See infra* at 8-9.  Google's headquarters is located in Mountain View, California, in the Northern District.  (Ex. 18, Google Inc.'s Motion to Transfer Venue, *Fujinomaki v. Google, Inc., et al.*.)  And Google's source code is maintained on secure servers there.  (Ex. 19, D. Hoffman Decl. ISO Google's Mtn. to Transfer, ¶¶ 6, 12.)  Thus, the relevant Google Now source code and design documents, and sample products running Google Now (such as the Nexus 4 phone and Nexus 10 tablet) are likely located there.

Similarly, by 2012, the Waze software application appears to have had the ability to predict a user's future destination.  (Ex. 20, Image of Waze "Driving to Work?")  The company that developed Waze was located in Palo Alto.  It has since been acquired by Google, and is now housed in Google's Mountain View headquarters.  (Ex. 21, 5/13/13 CNBC "Disruptor" 50: Waze; Ex. 22, Waze Contact Us.)  As a result, copies of the 2012 Waze software, along with source code and design documents, are likely located in the Northern District.

### c)   The Location of Uniloc's Documents Does Not "Balance" The Evidence Apple Has Presented.

The location of Uniloc's documents does not counterbalance the sources of proof in the Northern District.  This Court and the Federal Circuit have recognized that an accused infringer "will most probably have the greater volume of documents relevant to the litigation."  *Bush Seismic*, 2016 WL 1545855 at *3; *see In Re Genentech*, 566 F.3d at 1345.  That is particularly true here because Uniloc apparently never implemented the asserted patents.  Beyond publicly-available prosecution files, it is unclear what relevant documents Uniloc believes it has in Texas. Further, many of Uniloc's documents are likely already in California.  Uniloc's CFO, inventor,

and IP counsel live and work in Southern California.  (*See supra* at 2-3.) This strongly suggests that, at a minimum, the documents these witnesses use are also located there.

In sum, all of Apple's evidence and non-party documents and physical evidence is located in the Northern District of California.  Even if Uniloc maintains some of its documents in this District, the location of the sources of proof, on balance, strongly favors transfer.

### 2)   The Availability Of Compulsory Process Favors Transfer.

"Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses."  *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp.2d 867, 874 (E.D. Tex. 2013).  The ability to compel live trial testimony is crucial for evaluating a witnesses' testimony.  *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).  A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person."[3]  Fed. R. Civ. P. 45(c)(1)(A), (B).

Here, the Northern District has subpoena power over numerous third-party witnesses who are outside this Court's subpoena power.  For instance, before the '199 Patent was filed, Northern-District-based engineers Guang Yang, Andrew Kirmse, Emil Praun, Pablo Bellver, and Keir Banks Mierle developed, and filed a patent application on, a location-prediction system. (Ex. 23, U.S. Patent No. 8,949,013.)  These engineers' system used "location history" data associating a user with a location, time, and a "plurality of destinations" based on a "visit likelihood distribution."  (*Id*. at 2:11-15, 2:19-26.)  If the probability that a user device would be at a particular location at a future time exceeded a "threshold," the system delivered information to the device.  (*Id*. at 20:20-47.)  This prior art is, as shown in the attached chart, material to the

---

[3] This provision does apply to a non-party for whom attendance would "incur substantial expense."  Fed. R. Civ. P. 45(c)(1) (B)(ii).

'199 patent.  (Ex. 24.)  The inventors' employer, Google, commercialized a predictive location system apparently relating to their work.  (Ex. 16.)  Messrs. Yang, Kirmse, Praun, Bellver, and Mierle likely have relevant knowledge regarding the conception, operation, and reduction to practice of that system.  Each of these witnesses resides in the San Francisco Bay Area, within the subpoena power of the Northern District.  (Ex. 25 at pp. 1-14, LinkedIn Pages.)

In addition, by 2008, several Qualcomm employees appear to have been developing a system for delivering geo-targeted advertisements.  (Ex. 26, U.S. Patent Application 2009/0125321.)  Publications regarding this Qualcomm work describe delivering information to a user only if certain threshold criteria, such as a probability that a user will visit a particular location, are exceeded.  (*Id.* at [219-220], [372-373].)  As detailed in the attached claim chart, this work thus appears to be material prior art to the '199 Patent.  (Ex. 27.)  At least two engineers who worked on the 2008 Qualcomm prior art, Mark Charlebois and John Jozwiak, are located in Southern California.  (Ex. 25 at 21-26, LinkedIn Pages)  These witnesses are thus subject to a trial subpoena from the Northern District, but not from this Court.

Further, Uniloc acquired the asserted '976 Patent from a San Francisco-based company called NetAuthority, Inc.  (Ex. 28, 8/27/13 '976 Patent Assignment.)  NetAuthority itself had previously purchased the '976 Patent.  (Ex. 29, 2/26/13 '976 Patent Assignment.)  NetAuthority's then-CEO, Christopher Brennan, and its then-CFO, Matt Kowalec, executed the sale documents.  (Ex. 29, 1/2/13 '976 Patent Assignment; Ex. 28.)  Messrs. Brennan and Kowalec thus likely have relevant information regarding the valuation of the '976 Patent.  They may also have knowledge regarding the ownership of that patent, and Uniloc's standing to sue on it.  Mr. Brennan is based in the San Francisco Bay Area; the Northern District thus has absolute subpoena power over him.  (Fed R. Civ. P. 45(c)(1)(A), Ex. 25 at pp. 15-16, Brennan LinkedIn

Page.)  Mr. Kowalec lives in Southern California and is thus subject to a trial subpoena from the Northern District.  (Fed. R. Civ. P. 45(c)(1)(B)(ii), Ex. 25 at pp. 17-20, Kowalec LinkedIn Page.)  None of the witnesses identified above are subject to process in this District.

As far as Apple is aware, there are no foreseeable material third-party witnesses in the Eastern District of Texas.  Uniloc has previously claimed that it has former employees in Texas who may have unspecified "historical knowledge regarding Uniloc's business."  (Ex. 9 at ¶ 14 .)  These generic statements are entitled to no weight.  Witness convenience is relevant only if a party can specifically identify the "expected relevant and material information [the witness has] to the litigation at hand."  *Realtime Data, LLC v. Rackspace US, Inc.*, 2017 WL 772653, *10 (E.D. Tex. Feb. 28, 2017); *Bush Seismic*, 2016 WL 1545855 at *4.  Uniloc has never presented evidence that any third party within this District has "relevant and material information" to this litigation.  The availability of compulsory process thus favors transfer.

### 3)  The Convenience Of Both Party And Non-Party Witnesses Favors Transfer.

The convenience of willing witnesses also favors transfer.  This factor is critical: "[t]he convenience of the witnesses is probably the single most important factor in transfer analysis."  *In Re Genentech*, 566 F.3d at 1342.  To evaluate witness convenience, "[t]he Court must consider the convenience of both the party and non-party witnesses."  *Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp.2d 630, 644 (E.D. Tex. 2011).  Of these, "the convenience to non-party witnesses is afforded greater weight."  *Adaptix*, 937 F. Supp.3d at 875.

As explained above, six known third-party witnesses reside in the Northern District.  *See supra* at 9.  These witnesses are within a one hour drive of the Northern District courthouses in San Jose, San Francisco, and Oakland.  (Ex. 30, Witness Travel Times to Marshall & NDCAL at pp. 1-3.)  In contrast, these witnesses are, at best, about six hours and more than 1,000 miles from Marshall.  (*Id.* at pp. 7, 9)  If any of these witnesses appear voluntarily at trial, the Northern

10

District is markedly more convenient for them.   Three additional third-party witnesses are located in Southern California, an hour's flight from the Bay Area.  *See supra* at 9-10; (Ex. 30 at pp. 4-6.)  The Northern District is more convenient for them as well (*Compare id.* at pp. 4-6 with pp. 8-9).

With respect to party witnesses, numerous Apple witnesses with relevant knowledge are located in the Northern District.[4]  For instance, each of the following Apple employees works in the Northern District; none works in Texas or with anyone in Texas:

- **Alok Rishi** is an Apple Software Engineering Manager for the Maps Predictions and Extensions team.   Mr. Rishi and his team are knowledgeable about functionality in Maps that displays estimated traffic times for suggested locations. Mr. Rishi and those members of his team working on suggested locations are in the Northern District.  (Jaynes Decl. ¶ 8.)

- **Tim Aerts**, a Senior Software Engineer in the Predictions and Extensions group, is knowledgeable about the algorithm used to populate a list of suggested destinations in Apple Maps.  Mr. Aerts is located in the Northern District.  (*Id.* ¶ 9.)

- **Eric Thomas** is an Engineering Manager on Apple's iOS Restore Team and is knowledgeable about the iOS update process used during device restores.  Mr. Thomas and his team are located in the Northern District.  (*Id.* ¶ 13.)

- **Brad Reigel** is a Software Manager on the iOS Build Project Management team. He, along with his team, is knowledgeable about the iOS update process.  Mr. Reigel and his team are located in the Northern District.  (*Id.* ¶ 12.)

- **Timm Hannon** is an Apple Senior Software Engineer who is knowledgeable about Apple's UDID and how it is generated.   Mr. Hannon is located in the Northern District.  (*Id.* ¶ 11.)

- **Thomas Mensch** is an Apple Secure Systems Engineer knowledgeable about inputs to the UDID.  Mr. Mensch is located in the Northern District.  (*Id.* ¶ 10.)

---

[4] By identifying witnesses, Apple does not concede that its products practice Uniloc's claims. For instance, as Apple has previously informed Uniloc, Apple does not use carbon or silicon degradation in generating device identifiers, as the '976 Patent requires.

- **<u>Diedre Caldbeck</u>** is an Apple Product Marketing Manager who is knowledgeable about the marketing of Apple products using the accused technologies.  Ms. Caldbeck is located in the Northern District.  (*Id.* ¶ 14.)

- **<u>Heather Mewes</u>** is a Principal Counsel at Apple who is knowledgeable about the licensing of intellectual property by and to Apple.  Ms. Mewes is located in the Northern District.  (*Id.* ¶ 15.)

- **<u>Michael Jaynes</u>** is an Apple finance employee who has information about sales of the accused products.  Mr. Jaynes is located in the Northern District.  (*Id.* ¶¶ 1, 16.)

Apple's witnesses are a 15-minute car ride from the Northern District courthouse in San Jose, and around an hour by car from the courthouses in San Francisco and Oakland.  (Ex. 30 at pp. 10-12.)  Travelling to Marshall, in contrast, requires Apple's witnesses to travel more than 1,000 miles, via either (a) a 5 hour, 15-minute flight (with connection) to Shreveport, Louisiana, followed by a 40-minute drive to Marshall (*Id.* at pp. 9, 13); or (b) a 3+ hour flight to Dallas, followed by a nearly 3 hour drive to Marshall (*Id.* at pp. 14, 16).  This difference is entitled to significant weight: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204-05.  Such long-distance travel imposes burdens beyond travel time, including "meal and lodging expenses" and "overnight stays [that] increase[] the time which these fact witnesses must be away from their regular employment."  *Id.* at 205.  Transfer would avoid these burdens.

Set against this, there is no evidence that any Uniloc witness located exclusively in Texas has any specific information relevant to this case.  Vague statements by Uniloc that its witnesses "may" have generic information relevant to Uniloc's "business" are entitled to no weight.  *See Realtime Data*, 2017 WL 772653 at *10; *Bush Seismic*, 2016 WL 1545855 at *4.

Finally, Uniloc's witnesses appear to voluntarily spend significant time in California.  Requiring them to attend trial in the Northern District is therefore unlikely to be a substantial

burden.  As courts in this District have noted, the Northern District is more convenient than this

for willing witnesses located in Southern California.  *Adaptix, Inc. v. Apple Inc.*, 2013 WL

12138597, *5 (E.D. Tex. Mar. 28, 2013).   Here, Mr. Etchegoyen, Uniloc's sole inventor,

apparently resides in Orange County, California.  (Ex. 10, *supra*.)  One of Uniloc's two patent

prosecutors, Ms. Kiatkulpiboone, lives in the Los Angeles area, as does Uniloc's CFO, Mr.

Turner.  (Exs. 7, 8.)  And Uniloc's General Counsel, Mr. Burdick, co-owns property in Orange

County and appears to maintain a residence there.  (Ex. 15.)  These Uniloc witnesses have access

to over 150 daily flights from the Los Angeles area to San Francisco.  (Ex. 30 at pp. 17-19.)

These flights take as little as 1 hour, 10 minutes and cost under $100 each way.  (*Id*.)  In contrast,

travel from Los Angeles to Marshall requires a 3-hour flight to Dallas followed by at least a two

and a half hour drive to Marshall.  (*Id.* at pp. 15-16.)  Further, if any of Uniloc's witnesses work

in Uniloc's Plano office, this Court is 2 hours and 20 minutes away by car.  (*Id.* at p. 20.)  Thus,

these witnesses will have to travel a significant distance regardless of where this case is pending.

Finally, any Uniloc Luxembourg witnesses would have to undertake long-distance travel from

Europe to reach either Texas or California.

Overall, "the number of witnesses residing in Texas, and any relevant information which

they may provide, pales in comparison to the number of party and non-party witnesses with

relevant information residing in Northern California."  *Wireless Recognition Techs. LLC v.*

*A9.com, Inc.*, 2012 WL 506669, *5 (E.D. Tex. Feb. 15, 2012).  Witness convenience strongly

favors transfer.

### 4)   Other Practical Problems Associated With Trial Of This Case Are Neutral.

This case is not one that presents "other practical problems" that make trial more "easy,

expeditious and inexpensive" in any forum.  *In Re Volkswagen*, 371 F.3d at 203.  Because no

substantive proceedings have yet occurred, and none of the patents-in-suit have previously been litigated, this Court does not have prior expertise with the patents-in-suit.

**C.     The Public Interest Factors Favor Transfer To The Northern District.**

    **1)   California Has A Strong Local Interest In Both The Accused Products And The Asserted Inventions.**

The Northern District of California has a strong local interest in this case "because the cause of action calls into question the work and reputation of several individuals residing in or near that district." *In Re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2008). Uniloc's action directly affects Apple's Cupertino-based engineers, who were "involved in the development and implementation of the accused products." *ACQIS LLC v. EMC Corp.*, 67 F. Supp.3d 769, 779 (E.D. Tex. 2014).   Uniloc's claims also implicate the work of Waze and Google, and their employees, who commercialized prior-art systems in the Northern District.

In contrast, this District has only an attenuated interest in protecting Uniloc's patents.[5]  At least two of these patents were apparently invented in California.  ([Dkt. No. 1-4, '852 Patent](#); [Dkt. No. 1-3, '976 Patent](#).)  The owner of these patents is in Luxembourg, not Texas.  Fortress Credit Co., LLC, located in San Francisco, holds at least a security interest in the patents-in-suit. (Ex. 31, Security Interest Assignment.)  And Uniloc USA, the only party even partially located in this District, is at best a licensee of the patents-in-suit.  Any local interest in protecting the patents-at-issue is thus spread between the Northern District, Europe, and this District.   On balance, the Northern District has a stronger local interest in this case than does this District.

    **2)   The Remaining Public-Interest Factors Are Neutral.**

Beyond the local-interest factor, the three remaining public-interest factors are neutral. First, as a court in this District recently observed, "[t]he Eastern District of Texas and Northern

---

[5] While Apple sells accused products in this District, that is true nationally and thus irrelevant. *A9 Wireless Rec. Techs. LLC v. A9.com, Inc.*, 2012 WL 506669 at *6 (E.D. Tex. Feb. 15, 2012).

District of California have similar average times to trial." *Gonzalez v. Tagged, Inc.*, 2015 WL 5578367, *4 (E.D. Tex. Sep. 22, 2015).   Further, court speed "appears to be the most speculative" of the factors in the transfer analysis.   *Genentech*, 566 F.3d at 1347; *Uniloc USA, Inc. v. Distinctive Development Ltd.*, 964 Supp.2d 683 (E.D. Tex. 2013).   Familiarity with the governing law also is neutral. "[B]oth the Northern District of California and [the] Eastern District of Texas are familiar with patent law." *Network Protection Sciences, LLC v. Juniper Networks, Inc.*, 2012 WL 194382, *7 (E.D. Tex. Jan. 23, 2012).   There is no prospect for any conflicts of laws; the last public-interest factor is thus also neutral.

## V.    CONCLUSION

This Court has previously transferred multiple patent cases against Apple to the Northern District.   The facts here are at least as compelling as in those cases.   As in *DSS Tech. Mgmt. v. Apple Inc.*, for instance, Apple has a "large volume of relevant documents," and witness convenience and the availability of process favor transfer. 2014 WL 6847569 at *3.   Similarly, as in *Porto Tech. Co., Ltd. v. Apple Inc.*, the "convenience of the witnesses" and the "power to compel [] third-parties to appear at trial" favor transfer.   2016 WL 937366, *2 (E.D. Tex. Mar 11, 2016).   And this Court has relied on similar convenience factors to transfer cases against Apple even when a plaintiff's headquarters, current or former employees, and documents were within this district.   *PersonalWeb Techs.*, 2014 WL 1689046 at *13; *Adaptix*, 2013 WL 12138597 at *8.   This case has no meaningful connection to Texas, and many threads tying it to California.   The Court should grant Apple's motion to transfer.


Date: June 16, 2017                                  Respectfully submitted,
                                                     By:  */s/ Michael Pieja*
                                                     Michael T. Pieja

Alan E. Littmann
Emma C. Neff
Doug Winnard
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
564 W. Randolph St., Suite 400
Chicago, IL 60661
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
eneff@goldmanismail.com
dwinnard@goldmanismail.com

Melissa R. Smith
GILLAM & SMITH LLP
303 S. Washington Avenue
Marshall, TX 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

*Counsel for Defendant Apple Inc.*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that, prior to filing this motion, counsel for Apple complied with the meet-and-confer requirement of L.R. CV-7(h).  Specifically, on May 25, 2017, lead and Texas counsel for Apple (myself and Gil Gillam) met and conferred telephonically with lead and Texas counsel for Uniloc (Paul Hayes and Anthony Vecchione).  During these discussions, Uniloc's counsel stated that Uniloc would not agree to transfer of this case from this District to the Northern District of California.  Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ *Michael T Pieja*
Michael T. Pieja (*pro hac vice*)


## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing DEFENDANT APPLE INC.'S MOTION TO CHANGE VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA was filed electronically this 16th day of June, 2017, in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

/s/ *Michael T Pieja*
Michael T. Pieja (*pro hac vice*)